IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | | |
|---|---|---|
| JIRA CHURCHILL, | * | |
| Plaintiff, | * | |
| v. | * | Case No.: PWG-17-980 |
| PRINCE GEORGE'S COUNTY PUBLIC SCHOOLS, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Jira Churchill, who identifies as a lesbian and has an autoimmune disorder, began working for Defendant Prince George's County Public Schools ("School System") in August 2014. Am. Compl. ¶¶ 21–24, ECF No. 11-1. Churchill believes that she was harassed and discriminated against by her supervisors, colleagues, and students based on her sexual orientation and nonconformity with gender stereotypes, and that she was retaliated against for having filed charges with the Equal Employment Opportunity Commission ("EEOC") and Prince George's County Human Relations Commission ("HRC"). *Id.* ¶¶ 30–73. Ultimately, Churchill's contract with the School System was not renewed, *id.* ¶ 73, and she filed this litigation. ECF No. 1. She alleges discrimination (in the form of both a hostile work environment and termination) based on sexual orientation and gender stereotypes, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Maryland Fair Employment Practices Act ("MFEPA"), Md. Code Ann., State Gov't § 20-601 *et seq.*, as well as

retaliation in violation of Title VII, the MFEPA, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* Am. Compl. ¶¶ 100–59.

The School System has filed a motion to dismiss Churchill's Title VII and MFEPA discrimination claims in Counts I–IV (with the exception of her MFEPA hostile work environment claim based on her sexual orientation in Count I) for failure to state a claim, and her retaliation claims based on wage withholding (Count VII) for failure to exhaust administrative remedies. Def.'s Mot., ECF No. 13.[1] The School System's motion is granted in part, as Title VII does not entertain a cause of action for discrimination on the basis of sexual orientation and Churchill fails to state a claim for discriminatory termination on the basis of sexual orientation or gender stereotypes.[2] It is denied in part as Churchill has stated a claim for hostile work environment based on gender stereotypes and she has exhausted her administrative remedies with regard to her claim for retaliation in the form of wage withholding. Thus, Counts III and IV, as well as the Title VII claim in Count I are dismissed; and the MFEPA claim in Count I, as well as the claims in Counts II, V, VI, and VII remain. Churchill may file a second amended complaint by December 22, 2017, and the School System must supplement its Answer no later than January 12, 2018.

---

[1] The parties fully briefed the motion. ECF Nos. 13-1, 16, 17. A hearing is not necessary. *See* Loc. R. 105.6.

[2] Churchill's claims for discriminatory termination on the basis of sexual orientation under MFEPA and on the basis of gender stereotypes under Title VII and MFEPA are dismissed without prejudice and she will be afforded the opportunity to amend her Complaint only as to those claims. Churchill's failure to allege that she was performing satisfactorily and that the position was held open or filled by a person outside the protected class were not stated as grounds for dismissal of Counts III and IV by the School System in its pre-motion letter, ECF No. 6. As discussed below, amending her complaint for her claim of discriminatory termination on the basis of sexual orientation under Title VII would be futile, and therefore, no amendment will be permitted.

## Background[3]

Churchill began working for the School System at Thurgood Marshall Middle School in August 2014. Am. Compl. ¶ 21. On September 19, 2014, Churchill was reassigned to DuVal High School where she worked under Principal Mark Covington and Assistant Principal Shanay Wheeler. *Id.* ¶¶ 22–24. The principal of Thurgood Marshall Middle School was aware of Churchill's sexual orientation and informed Covington and Wheeler, who informed Churchill's students. *Id.* ¶¶ 25–27. Churchill informed teachers at her new school about her sexual orientation, who in turn also informed students. *Id.* ¶¶ 28–29.

In October 2014, Churchill found "the homophobic slur 'FAG' written on her chalkboard along with other derogatory remarks." *Id.* ¶ 30. Churchill informed Wheeler by sending her a picture of the chalkboard, but no action was taken. *Id.* ¶ 31. Throughout 2014, students repeatedly referred to Churchill as "Mister Churchill" and "mocked her sexual orientation by referencing how much she must like rainbows" as well as at least one student calling Churchill a "fag" directly. *Id.* ¶¶ 33–35.

At DuVal High School, the teachers were praised for allowing their students to eat lunch in their classrooms; however, when Wheeler noticed the majority of students in Churchill's classroom for lunch were female, Wheeler told Churchill "'the school [can't] have [the female students] being in [Ms. Churchill's classroom].'" *Id.* ¶¶ 36–38. Churchill alleges that this was due to her sexual orientation. *Id.* ¶ 38.

Additionally, Churchill requested accommodations for her autoimmune disorder. *Id.* ¶ 47. On December 10, 2014, Churchill filed a charge ("December 2014 Charge") of disability

---

[3] For the purposes of considering Defendant's motion, I accept the facts that Plaintiff has alleged in her Amended Complaint as true. *See Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011).

discrimination and retaliation before the EEOC and the HRC. *Id.* ¶¶ 9, 50; Dec. 2014 Charge, ECF No. 13-2. Churchill also filed seven administrative complaints between December 2014 and April 2015, alleging harassment and retaliation. Am. Compl. ¶¶ 52–54.

Thereafter, on February 5, 2015, Churchill "was issued a Letter of Reprimand for failing to appear to [sic] at two parent conferences which Ms. Wheeler scheduled without consulting Ms. Churchill." *Id.* ¶ 55. Churchill received a second Letter of Reprimand on February 10, 2015 and was notified on March 4, 2015 that a review panel recommended that her contract not be renewed. *Id.* ¶¶ 56–57.

On April 4, 2015, in a meeting with Churchill and her union representative, Covington informed Churchill that "she was to be removed from the classroom and banned from teaching students." *Id.* ¶ 58.[4] Covington also referred to Churchill as being "'aggressive,'" which Covington said was "an attribute of 'her people,'"—comments Churchill understood as references to her sexual orientation because Churchill and Covington are the same race—and Covington "stated that she was removed because she was too much of an influence in the classroom." *Id.* ¶¶ 59–62.

Also during April 2015, Churchill intervened when a student was harassing another student who is homosexual. *Id.* ¶ 39. Churchill recommended disciplinary action to Covington, but no action was taken. *Id.* ¶¶ 39–41. Additionally, her newly assigned supervisor, Ms. Price, told Churchill that "she was handy with tools like her husband" as Churchill was fixing a fax machine and that "'[her] people are handy.'" *Id.* ¶¶ 64–67. Churchill understood this to mean she "was not stereotypically" female based on a "gender stereotype . . . that men are more skillful with tools than women." *Id.* Lastly during April 2015, Covington instituted procedures to have

---

[4] Once Churchill was removed from teaching she was "assigned to perform administrative tasks." Am. Compl. ¶ 61. The exact nature of her tasks is unknown.

Churchill terminated before the end of her contract, but he was unsuccessful. *Id.* ¶¶ 70–71. Churchill was terminated at the end of her contract on June 30, 2015. *Id.* ¶ 73.

From January until June of 2015, Churchill had wages withheld in the amount of $6,624.58; she alleges that they were withheld in retaliation for her filing an EEOC charge. *Id.* ¶¶ 74–91.

On September 23, 2015, Churchill filed a second charge with the EEOC alleging discrimination and retaliation. Sept. 2015 Charge, ECF No. 13-3. Churchill received her right to sue notice on the September 2015 Charge on February 24, 2017 and on the December 2014 Charge on April 13, 2017. *Id.* ¶ 9(a)–(e). Churchill filed this litigation on April 10, 2017. Compl., ECF No. 1. Churchill alleges seven counts: (I) hostile work environment on the basis of sexual orientation in violation of Title VII and the MFEPA; (II) hostile work environment on the basis of gender stereotypes in violation of Title VII and the MFEPA; (III) discriminatory termination on the basis of sexual orientation in violation of Title VII and the MFEPA; (IV) discriminatory termination on the basis of gender stereotypes in violation of Title VII and the MFEPA; (V) retaliation in violation of Title VII and the MFEPA; (VI) retaliation in violation of the ADA; (VII) withholding wages in retaliation for protected activities in violation of Title VII, the MFEPA, and the ADA. Am. Compl.

## Standards of Review

"[F]ederal courts lack subject matter jurisdiction over Title VII claims for which a plaintiff has failed to exhaust administrative remedies." *Murphy v. Adams*, No. DKC-12-1975, 2014 WL 3845804, at *7 (D. Md. Aug. 4, 2014) (quoting *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 406 (4th Cir. 2013)). On this basis, Defendant moves to dismiss Count VII, Churchill's claim of retaliation in the form of wage withholding, under Fed. R. Civ. P. 12(b)(1).

In considering Defendant's motion, "the Court may . . . consider matters beyond the allegations in the complaint" because Defendant assert that "the jurisdictional allegations in the complaint are not true." *Fontell v. MCGEO UFCW Local 1994*, No. AW-09-2526, 2010 WL 3086498, at *3 (D. Md. Aug. 6, 2010); *see Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). The Court "regard[s] the pleadings' allegations as mere evidence on the issue," and its consideration of additional evidence does not "convert[] the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac Ry. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *see Adams*, 697 F.2d at 1219 ("A trial court may consider evidence by affidavit, depositions or live testimony without converting the proceeding to one for summary judgment.").

The School System also moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), which provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted." *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012). This rule's purpose "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)). To that end, the Court bears in mind the requirements of Fed. R. Civ. P. 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), when considering a motion to dismiss pursuant to Rule 12(b)(6). Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79; *see Velencia*, 2012 WL 6562764, at *4 (discussing standard from *Iqbal* and *Twombly*). Similarly, "unsupported legal allegations need not be accepted." *Nam v. 2012 Inc.*, No. DKC-15-1931,

2016 WL 107198, at *3 (D. Md. Jan. 11, 2016) (citing *Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989)).

In an employment discrimination case such as this, the plaintiff "is not required to plead facts that constitute a *prima facie* case in order to survive a motion to dismiss," but "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Nam*, 2016 WL 107198, at *3 (quoting *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010)); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–15 (2002). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## Discussion

*Discrimination Based on Sexual Orientation, in Violation of Title VII (Counts I and III)*

Churchill brings clams of discrimination based on sexual orientation under Title VII and the MFEPA. Am. Compl. ¶¶ 100–08, 121–28. Title VII, as noted, proscribes discrimination based on "race, color, religion, sex, or national origin," 42 U.S.C. § 2000e–2(a), while MFEPA

> (1) assure[s] all persons equal opportunity in receiving employment and in all labor management-union relations, regardless of race, color, religion, ancestry or national origin, sex, age, marital status, *sexual orientation*, gender identity, or disability unrelated in nature and extent so as to reasonably preclude the performance of the employment; and (2) to that end, . . . prohibit[s] discrimination in employment by any person.

Md. Code Ann., State Gov't § 20-602 (emphasis added). The School System argues that the Title VII claims in Count I (hostile work environment on the basis of sexual orientation) and Count III (termination on the basis of sexual orientation) must be dismissed because discrimination on the basis of sexual orientation is not proscribed under Title VII. Def.'s Mem. 7–8. The School System argues that this is "well established within the Fourth Circuit." *Id.*

7

(citing *Wrightson v. Pizza Hut of Am., Inc.*, 99 F.3d 138, 143 (4th Cir. 1996); *Hinton v. Va. Union Univ.*, 185 F. Supp. 3d 807, 814 (E.D. Va. 2016); *Sloan v. John Hopkins Hosp.*, No. RDB-04-3563, 2006 WL 2709627, at *7 (D. Md. Sept. 19, 2006)).

Churchill counters that the precedent the School System cites is merely dicta and that this Court is not bound by it. She also advocates that this Court instead should adopt the position of courts outside the Fourth Circuit in finding that sexual orientation discrimination is incorporated within sex discrimination. Pl.'s Opp'n 6–10 (citing, *e.g.*, *Hively v. Ivy Tech Cmty. Coll. of Indiana*, 853 F.3d 339, 345 (7th Cir. 2017); *Boutillier v. Hartford Pub. Sch.*, 221 F. Supp. 3d 255, 268–69 (D. Conn. 2016); *U.S. Equal Emp't Opportunity Comm'n v. Scott Med. Ctr., P.C.*, 217 F. Supp. 3d 834, 839 (W.D. Pa. 2016)).

Churchill is correct that the Fourth Circuit in *Wrightson* addressed this question only in dicta. However, in that decision it unequivocally stated that "Title VII does not afford a cause of action for discrimination based upon sexual orientation." *Wrightson*, 99 F.3d at 143. Additionally, the Fourth Circuit (albeit in an unpublished opinion) more recently cited *Wrightson* for this proposition, *Murray v. N.C. Dep't of Pub. Safety*, 611 F. App'x 166, 166 (4th Cir. 2015), and this Court has followed that precedent in finding that Title VII does not protect against discrimination on the basis of sexual orientation, *Parrish v. Tile Shop, LLC*, No. JKB-16-1177, 2016 WL 8669919, at *5 (Sept. 30, 2016) (citing *Murray*, 611 F. App'x at 166); *see also Sloan*, 2006 WL 2709627, at *7 (citing *Wrightson*, 99 F.3d at 143). In light of this precedent, I will dismiss Counts I and III as far as each pertains to Title VII.[5]

---

[5] As noted, the School System does not challenge the MFEPA claim in Count I. I will address the MFEPA claim in Count III below.

*Hostile Work Environment on the Basis of Gender Stereotypes (Count II)*

In order to state a Title VII or MFEPA[6] claim for hostile work environment, Churchill must allege that she was subjected to "offending conduct" that (1) "was unwelcome," (2) "was because of" her gender, (3) "was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment," and (4) "was imputable to her employer." *Westmoreland v. Prince George's Cty., Md.,* 876 F. Supp. 2d 594, 614 (D. Md. 2012) (quoting *Hoyle v. Freightliner, LLC,* 650 F.3d 321, 331 (4th Cir. 2011)). The School System argues that Count II should be dismissed because Churchill's allegations are solely discrimination based on sexual orientation and not gender stereotyping and that the conduct was not adequately severe or pervasive to articulate a hostile work environment. Def.'s Mem. 9–11. The School System argues that certain factual allegations by Churchill should not be considered, but concedes that the following allegations may be: (1) during a meeting in April 2015, Principal Covington called Plaintiff "aggressive" and "that such an attribute was an attribute of 'her people'"; and (2) in April 2015, Ms. Price once told Plaintiff she was "handy with tools like her husband" and that "[her] people are handy." Def.'s Mem. 10. In the School System's view, however, these allegations are insufficient to state a claim for hostile work environment. *Id.*

As discussed, *supra*, Churchill's claims of discrimination based on sexual orientation are not protected under Title VII. However, the Supreme Court has held that claims alleging hostile work environments may be brought based on gender stereotypes. *Price Waterhouse v. Hopkins*,

---

[6] "The MFEPA 'is the state law analogue of Title VII.'" *Royster v. Gahler*, 154 F. Supp. 3d 206, 215 (D. Md. 2015) (quoting *Alexander v. Marriott Int'l, Inc.*, No. RWT-09-02402, 2011 WL 1231029, at *6 (D. Md. Mar. 29, 2011); citing *Haas v. Lockheed Martin Corp.*, 914 A.2d 735, 743 n.8 (Md. 2007)) (stating that, with regard to Title VII and MFEPA "it is appropriate to consider federal precedents when interpreting state and local laws"). Therefore, I will analyze Churchill's remaining claims under federal and state law together.

490 U.S. 228, 251-55 (1989) ("In forbidding employers to discriminate against individuals because of their sex, Congress intended to strike at the entire spectrum of disparate treatment of men and women resulting from sex stereotypes."). Courts interpreting *Price Waterhouse* have held that "'"sex" under Title VII encompasses both sex—that is, the biological differences between men and women—*and* [socially-constructed] gender [expectations].'" *Finkle v. Howard Cty., Md.*, 12 F. Supp. 3d 780, 788 (D. Md. 2014) (quoting *Schwenk v. Hartford*, 204 F.3d 1187, 1201 (9th Cir. 2000)).

Churchill alleges that numerous comments and actions taken by the School System or its employees and students were based on her nonconforming with gender stereotypes. For example, Churchill alleges that the School System encouraged teachers to permit their students to eat in their respective classrooms, however, because of Churchill's sexual orientation (that is, her nonconformity with the stereotype that women are sexually attracted to men, not women) and the majority of students eating in her classroom being female, Ms. Wheeler told Churchill that "the school [can't] have [the female students] being in [Ms. Churchill's classroom]." Am. Compl. ¶¶ 36–38 (alterations in original). Churchill also alleges that she was removed from her position as a teacher because, as a woman who did not conform with the stereotype that women are heterosexual, she was "too much of an influence" on her students. *Id*. ¶¶ 61–63. Churchill also has pleaded that the School System did not take action against colleagues and students when Churchill reported discriminatory conduct such as the messages on her chalk board, verbal comments, and the harassment of a homosexual student, all of which had to do with failure to conform with gender stereotypes. *Id*. ¶¶ 32–35, 39–41, 69. Churchill also was told when using tools that "[her] people are handy," *id.* ¶¶ 64–66, and during a meeting regarding removing her from teaching students she was told that "her people" are "aggressive," *id.* ¶¶ 59–60. She also

alleged that her removal from teaching students and the nonrenewal of her contract was due to her nonconforming with gender stereotypes based on her sexual orientation. *Id.* ¶¶ 60–63, 126. Churchill also claims that she was called a "fag" and addressed as "Mister Churchill," and that she was reprimanded and removed from teaching, and her contract was terminated. *Id.* ¶¶ 30–34, 55–61. Although Churchill's allegations may appear to be on the basis of sexual orientation, each also is a claim of discrimination based on gender stereotypes. "Of course, it is often difficult to draw the distinction between discrimination on the basis of gender stereotyping and discrimination on the basis of sexual orientation." *Henderson v. Labor Finders of Va., Inc.*, No. 12CV600, 2013 WL 1352158, at *4 (E.D. Va. Apr. 2, 2013). Churchill alleges that all of the actions taken and statements made were because she does not act as a stereotypical female, that is, that she is not heterosexual. Therefore, I will consider them as acts that could support a claim of hostile work environment based on gender stereotypes.

The School System argues that a number of these factual allegations should not be considered because they are discrete issues not linked to the alleged discrimination or they are not severe or pervasive. Relying on *Rock v. McHugh*, 819 F. Supp. 2d 456, 472 (D. Md. 2011), the School System argues that the personnel actions taken against Churchill—the letters of reprimand, removal of teaching duties, Covington's attempted termination, and nonrenewal of her contract—should not be considered because they are discrete and lack a link to the alleged discrimination. Def.'s Reply 6. This argument is unpersuasive. Unlike *Rock*, in which the Court granted summary judgment for the defendant based on a lack of evidence of discriminatory conduct, Churchill alleges that each action was taken because of her nonconformity with gender stereotypes. Churchill makes this clear throughout her Amended Complaint, and it is the cumulative effect and severity that matters. *See Nat'l R.R. Passenger*

11

*Corp. v. Morgan*, 536 U.S. 101, 103 (2002) ("[Repeat conduct creating a hostile work environment] occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own. Determining whether an actionable hostile environment claim exists requires an examination of all the circumstances . . . ."). *But see Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015) (identifying that a singular, isolated event of harassment can be so severe as to state a viable hostile work environment claim).

In *Boyer-Liberto*, the Fourth Circuit vacated a summary judgment award in favor of the employer because "a reasonable jury could find that [the manager's] two uses of the 'porch monkey' epithet—whether viewed as a single incident or as a pair of discrete instances of harassment—were severe enough to engender a hostile work environment." *Id.* at 280. Here, Churchill was called a "fag" to her face and through a message on her chalkboard. Am. Compl. ¶ 30, 31–33. Although different terms, I note the parallels between the derogatory terms when used and the impact they may have. Moreover, the term was not used in isolation; its use occurred along with all of the other alleged conduct in Churchill's Amended Complaint.

Based on the School System's administration failing to respond when Churchill reported discriminatory conduct and some of the administration's own conduct by removing Churchill from duties and restricting her from performing tasks based on its gender stereotypes, Churchill has alleged sufficient facts that the harassment may be imputed onto the School System and that it was tolerated by the School System for an extended period time. The totality of the alleged facts give rise to a plausible claim for a hostile work environment. *See Khoury v. Meserve*, 268 F. Supp. 2d 600, 613 (D. Md. 2003) (citing *Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993); *Chadha v. Northrop Grumman Sys. Corp.*, No. RDB-16-1087, 2017 WL 3226861, at *3 (D. Md.

July 31, 2017); *Alexander v. Glut Food Coop*, No. AW-10-955; 2011 WL 1065301 (D. Md. Mar. 18, 2011); *see also Barrett v. Applied Radiant Energy Corp.*, 240 F.3d 262, 267 (4th Cir.2001) (holding that "[w]here the hostile work environment is predicated on the abusive behaviors of coworkers, employer liability can only attach where the complaining employee has complained directly to the employer and the employer has failed to adequately respond.").

*Termination on the Basis of Sexual Orientation or Gender Stereotypes (Counts III and IV)*

To succeed on a claim for discriminatory termination, a plaintiff must show that

(1) she is a member of a protected class; (2) she suffered adverse employment action; (3) she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class.

*Westmoreland v. Prince George's Cty., Md.*, 876 F. Supp. 2d 594, 604 (D. Md. 2012); *see also Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007); *Riley v. Technical & Mgmt. Servs. Corp.*, 872 F. Supp. 1454, 1460–61 (D. Md. 1995). In the Fourth Circuit, the burden-shifting framework established in *McDonnell Douglas*, 411 U.S. at 800–06, applies to Title VII claims, including termination and retaliation claims. *IJames v. Autumn Corp.*, No. 08CV777, 2009 WL 2171252, at *8 (M.D.N.C. July 20, 2009); *Yashenko v. Harrah's NC Casino Co.*, 446 F.3d 541, 546 (4th Cir. 2006). Under this framework, after an employee makes out a *prima facie* case, the burden shifts to the employer, which then must "proffer evidence of a legitimate, non-discriminatory reason for the adverse employment action." *Wright v. Sw. Airlines*, 319 Fed. App'x 232, 233 (4th Cir. 2009). If the employer does so, the burden shifts back to the employee "to prove by a preponderance of the evidence that the proffered reasons were pretextual." *Id.* at 233.

The School System argues that Churchill has not pleaded that she was performing adequately or that she was replaced by someone outside of her protected class, that is, "a

heterosexual teacher or one who conformed to more traditional notions of gender expression." Def.'s Mem. 14–15. Churchill concedes that she did not expressly plead that she was performing satisfactory, but insists that instances such as Mr. Covington instituting hearing procedures against her demonstrate sufficiently the animus involved in her termination to overcome the deficiencies in her Amended Complaint. *Id*.

Thus, as Churchill concedes, she failed to plead that she was performing her duties at a level that met her employer's expectations. She also failed to plead that the position remained opened or was filled by a person outside the protected class. *See Westmoreland*, 876 F. Supp. 2d at 604. Moreover, there is no information in the record from which to find that it is plausible that either of these elements is present. *See Coleman*, 626 F.3d at 190. Therefore, Churchill's MFEPA claim in Count III, as well as Count IV in its entirety, are dismissed.[7]

*Withholding Wages in Retaliation for Protected Activities (Count VII)*

Churchill alleges that some of the wages she earned between January and May 2015 were withheld in retaliation for her filing an EEOC charge and administrative complaints (which constitute protected activity) against the School System in December 2014 and January 2015.

---

[7] Count III will be dismissed with prejudice with regards to Churchill's Title VII claim, however, Count III with regards to her MFEPA claim and Count IV in its entirety will be dismissed without prejudice. Churchill will be allowed to amend her MFEPA claim in Count III and the entirety of Count IV. As the Fourth Circuit does not recognize termination on the basis of sexual orientation under Title VII such an amendment would be futile. *See Wrightson*, 99 F.3d at 143. Churchill seeks to amend her Complaint, Pl.'s Opp'n 15 n.10, if required to plead the two missing elements. The School System's pre-motion letter, ECF No. 6, did not allege pleading deficiencies for the MFEPA claim in Count III and the Title VII and MFEPA claims in Count IV, and assuming Churchill has a Fed. R. Civ. P. 11 good faith basis for amending her MFEPA claim in Count III and all claims in Count IV to address the failure to allege the two elements currently missing, Churchill should have leave to do so. But those are the only amendments that will be allowed. Assuming she amends and alleges those elements, she would have stated a claim under MFEPA in Count III and under Title VII and MFEPA in Count IV. Therefore, no further motion to dismiss would be appropriate and the School System would need to file an amended answer.

Am. Compl. ¶¶ 149–59. The School System argues that Churchill's Title VII claim in Count VII is procedurally barred and therefore Count VII should be dismissed in full,[8] because Churchill did not include this allegation in her September 2015 EEOC charge, and it is not reasonably related to the claims in that charge. Def.'s Mem. 16–17, 23. Yet, the School System overlooks Churchill's earlier, December 2014 EEOC Charge. Churchill argues that her retaliation claim is properly before this Court because she filed that discrimination charge in December 2014, and she may bring any claims that are "reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint." Pl.'s Opp'n 15–17 (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962–63 (4th Cir. 1996)).[9]

Indeed, "a plaintiff asserting a Title VII claim of retaliation for filing a previous EEOC charge," as Churchill does here, "may raise the retaliation claim for the first time in federal court." *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 301–302 (4th Cir. 2009) (quoting *Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir. 1992)). Accordingly, Churchill's claim of retaliation in the form of wage withholding in response to her original charge is properly before this Court. *See id.*; *Nealon*, 958 F.2d at 590. Therefore, the motion to dismiss Count VII is denied.

---

[8] The School System fails to address Churchill's MFEPA and ADA claims in Count VII.

[9] The School System also raises the possibility that Churchill voluntarily dismissed Count VII. Def.'s Reply 10. I disagree. Churchill states clearly in her Opposition that her "claims of retaliatory wage withholding are within the scope of her charge," such that "she has administratively exhausted this claim." *See* Pl.'s Opp'n 2; *see also id.* at 15 ("Count VII of her Amended Complaint should not be dismissed."). The confusing language that the School System quotes from Churchill's Opposition ("Ms. Churchill's only notes that the withholding of wages a part of Defendant's overall hostile work environment [sic]," Def.'s Reply 10 (quoting Pl.'s Opp'n 15 n.11)) is simply an assertion that the wage withholding also served as evidence of the alleged hostile work environment.

## **Conclusion**

Accordingly, Defendant's Motion to Dismiss will be GRANTED IN PART and DENIED IN PART as follows:

1. Defendant's motion to dismiss Plaintiff's Title VII claim in Count III (termination on the basis of sexual orientation) is GRANTED with prejudice;

2. Defendant's motion to dismiss Plaintiff's MFEPA claim in Count III (termination on the basis of sexual orientation) and Plaintiff's Title VII and MFEPA claims in Count IV (termination on the basis of gender stereotypes) is GRANTED without prejudice;

3. Defendant's motion to dismiss Plaintiff's Title VII claim in Count I (hostile work environment on the basis of sexual orientation) is GRANTED with prejudice; and

4. Defendant's motion to dismiss Count II (hostile work environment on the basis of gender stereotypes) and Count VII (wage withholding) IS DENIED.

The following chart shows the claims that remain and the claims that have been dismissed:

| *Remaining claims* | *Dismissed claims* |
|---|---|
| Count I (hostile work environment on the basis of sexual orientation) under MFEPA | Count I (hostile work environment on the basis of sexual orientation) under Title VII with prejudice |
| Count II (hostile work environment on the basis of gender stereotypes) under Title VII and MFEPA | |
| | Count III (termination on the basis of sexual orientation) under Title VII with prejudice and MFEPA without prejudice |
| | Count IV (termination on the basis of gender stereotypes) under Title VII and MFEPA without prejudice |

| | |
|---|---|
| Count V (Title VII Retaliation) under Title VII and MFEPA | |
| Count VI (ADA Retaliation) under ADA and MFEPA | |
| Count VII (wage withholding claim) under Title VII, ADA, and MFEPA | |

Plaintiff shall be permitted to file a second amended complaint by December 22, 2017 to address the deficiencies only in her MFEPA claim in Count III and her Title VII and MFEPA claim in Count IV. Pursuant to Fed. R. Civ. P. 12(a)(4)(A), Defendant SHALL supplement its answer, ECF No. 12, to the Amended Complaint, or if filed the Second Amended Complaint, on or before January 12, 2018. I will then schedule a Rule 16 conference and this case will proceed to discovery.

A separate order shall issue.

Dated: <u>December 1, 2017</u>                         /S/
                                                        Paul W. Grimm
                                                        United States District Judge
jml