**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | | |
|---|---|---|
| **JIRA CHURCHILL,** | * | |
| Plaintiff, | * | |
| v. | * | Case No.: PWG-17-980 |
| **PRINCE GEORGE'S COUNTY PUBLIC SCHOOLS,** | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Jira Churchill and the Board of Education of Prince George's County (the "Board")[1] participated in a settlement conference before Judge Sullivan on April 18, 2018 and signed a term sheet ("Term Sheet") at the end of the settlement conference. Term Sheet, ECF No. 32 (under seal). They agree that they reached a settlement of this employment discrimination suit that day. Def.'s Mot. ¶ 2, ECF No. 31 (stating that, "[a]t the conclusion of that Settlement Conference, . . . the parties agreed to settle the instant litigation, and they memorialized the material terms of their agreement in a writing signed by Plaintiff, an authorized representative for the Board, and Magistrate Judge Sullivan (the 'Term Sheet')"); Pl.'s Opp'n 1, ECF No. 36 (insisting that "the Term Sheet was *the* settlement agreement"). The Term Sheet provided that the "parties [would] prepare terms of the settlement agreement including full and final release of all claims." *Id.*

---

[1] Churchill named Prince George's County Public Schools as Defendant in this lawsuit. See Compl., ECF No. 1. The Board clarifies that "no legal entitle by that name exists" and that "the correct corporate and legal name is the 'Board of Education of Prince George's County'"; it "treat[s] Plaintiff's allegations . . . as having been filed against the Board without the need for amendment." Partial Answer 1 n.1, ECF No. 7. Accordingly, I will refer to Defendant as the "Board."

Churchill acknowledges that she agreed to release all claims against the Board, Pl.'s Opp'n 1, and she has provided a Declaration to that effect. Churchill Decl. ¶ 10, ECF No. 36-1. But she has refused to sign the settlement agreements the Board has drafted, insisting that they exceed the scope of the parties' agreement. Pl.'s Opp'n 1.

The Board seeks to enforce the settlement agreement and asks the Court to compel Churchill to sign their latest draft settlement agreement ("Final Draft Settlement Agreement"). Def.'s Mot. 6.[2] Clearly, the parties reached an agreement. But, their agreement did not include all of the terms in the Final Draft Settlement Agreement, which also includes a confidentiality clause. Therefore, I will grant the Board's motion insofar as it seeks to enforce the settlement agreement that the parties *did* reach. I will not compel Churchill to sign the Final Draft Settlement Agreement but rather will enforce the parties' agreement as memorialized in the Term Sheet. The Board's motion is granted in part and denied in part.

## **Background**

The Term Sheet that Churchill and the Board signed before Judge Sullivan on April 18, 2018 provided for compensation to Churchill and, among other terms, it stated:

> Parties to prepare terms of the settlement agreement including full and final release of all claims. Settlement to include provision for training at Duval High School and Thurgood Marshall Middle School by [Board] on safety and inclusion in the school environment for LGBTQ students to be completed by December 2018 with certification sent from [Board] to plaintiff's counsel. . . .
>
> Judge Grimm will issue LR 111 Order.

Term Sheet, ECF No. 32 (under seal); *see* Def.'s Mot. ¶ 2 (quoting above provisions of Term Sheet). I dismissed the case on April 19, 2018, based on notice of their settlement agreement,

---

[2] The Motion is fully briefed. *See* ECF Nos. 31, 36, 37. A hearing is not necessary. *See* Loc. R. 105.6.

without prejudice to the right of either party to move to reopen for good cause. Loc. R. 111 Order, ECF No. 29.

The Board emailed Plaintiff a draft settlement agreement that, in its view, "incorporated the material terms of the Term Sheet and included other boilerplate language." Def.'s Mot. ¶ 4; *see* ECF No. 32-1. Churchill rejected the proposed training identified in the draft agreement, and the Board revised the draft to include instead a training that Churchill proposed. Def.'s Mot. ¶ 5. But, Churchill still would not sign. *Id.* ¶ 6; *see* Pl.'s Mot. to Reopen, ECF No. 30. Instead, she filed a Motion to Reopen Mediation on May 1, 2018, noting that "[t]he Court was notified that settlement had been obtained" and stating that "good cause exists" for reopening the case "to address issues arising post-mediation, which require [Judge Sullivan's] assistance." Pl.'s Mot to Reopen 1. The motion, filed in violation of the Letter Order regarding the Filing of Motions, ECF No. 3, did not include a memorandum in support, as required by this Court's Local Rule 105.1, or otherwise identify the "good cause" that would justify reopening the case.

Judge Sullivan denied the motion in a May 10, 2018 letter to the parties, in which he stated that "**[a]ll** of the terms of the settlement agreement (including the amount of compensation to be paid to the plaintiff) were negotiated, fully discussed, and reduced to writing in a material term sheet that all parties signed at the conclusion of the settlement conference." May 10, 2018 Ltr., ECF No. 31-4 (emphasis added). He observed that there had been "a meeting of the minds and an agreement as to the material terms of the settlement in this case" and that it "not [be] appropriate for this Court to reopen the settlement conference." *Id.*

Thereafter, the Board asked Churchill again to sign the draft agreement, May 10, 2018 Email, ECF No. 31-5, and she refused, insisting that she had signed the Term Sheet and did not have to sign anything else. May 14–16, 2018 Emails, ECF No. 32-3. The Board drafted a revised

3

agreement ("Final Draft Settlement Agreement") that, in its view, "essentially reduc[ed] it to the terms of the Term Sheet," but Churchill would not sign. Def.'s Mot. ¶ 9.

The Board then filed a Motion to Enforce Settlement Agreement, ECF No. 31. As noted, it asks the Court to "[e]nter an Order enforcing the Term Sheet" and to "compel[] Plaintiff to execute the Final Draft Settlement Agreement." Def.'s Mot. 6. Churchill insists that she "was repeatedly informed by Judge Sullivan that the Term Sheet was *the* settlement agreement" and that "any other agreement would concern non-material terms," and on that basis she refuses to sign the Final Draft Settlement Agreement, which contains "a confidentiality provision that . . . is not a provision to which Ms. Churchill agreed." Pl.'s Opp'n 1, 2. She acknowledges that "she has released her claims against the Board" and argues that "no separate release is required." *Id.* at 1. And, she has filed a Declaration in which she states: "I understood at the time I signed the Term Sheet that I was releasing any legal claims I had against the Board as of the date of signing." Churchill Decl. ¶ 10.

## **Discussion**

A district court has "inherent authority, deriving from [its] equity power, to enforce settlement agreements." *Hensley v. Alcon Labs, Inc.*, 277 F.3d 535, 540 (4th Cir. 2002) (explaining that "resolution of a motion to enforce a settlement agreement . . . may be accomplished within the context of the underlying litigation without the need for a new complaint," even though the motion "draws on standard contract principles"). The question of whether to enforce a settlement agreement is governed by "standard contract principles," because a settlement agreement is nothing more nor less than a contract. *See Topiwala v. Wessell*, 509 F. App'x 184, 186 (4th Cir. 2013) (per curiam); *see Hayward v. Brown*, No. PWG-15-3381, 2017 WL 2117364, at *2 (D. Md. May 16, 2017) ("Under Maryland law, '[s]ettlement agreements are enforceable as independent

4

contracts, subject to the same general rules of construction that apply to other contracts.'" (quoting *Maslow v. Vanguri*, 896 A.2d 408, 419 (Md. Ct. Spec. App. 2006))), *aff'd*, 696 F. App'x 102 (4th Cir. 2017) (per curiam). Ordinarily, as a matter of Maryland contract law, a party seeking to enforce a settlement agreement "must show (1) offer and acceptance, (2) consideration, and (3) an agreement containing definite and material terms." *Rohn Prods., Int'l v. Sofitel Capital Corp. USA*, No. WDQ-06-0504, 2010 WL 681304, at *3 (D. Md. Feb. 22, 2010) (citing *Cochran v. Norkunas*, 919 A.2d 700, 708 (Md. 2007)).

After "ascertain[ing] whether the parties have in fact agreed to settle," the court must "discern the terms of that settlement." *Power Servs., Inc. v. MCI Constructors, Inc.*, 36 F. App'x 123, 125 (4th Cir. 2002) (per curiam) (quoting *Moore v. Beaufort Cty.*, 936 F.2d 159, 162 (4th Cir. 1991)).

> [I]f there is a substantial factual dispute over either the agreement's existence or its terms, then the district court must hold an evidentiary hearing. If, however, a settlement agreement exists and its terms and conditions can be determined, as long as the excuse for nonperformance is comparatively unsubstantial, the court may enforce the agreement summarily.

*Swift v. Frontier Airlines, Inc.*, 636 F. App'x 153, 156 (4th Cir. 2016) (per curiam).

Here, Churchill does not dispute that the parties reached an agreement or challenge the terms stated on the Term Sheet that the parties signed. Moreover, she does not dispute that she agreed to release all claims against the Board. Clearly the Board, seeking to enforce the agreement, does not question its existence. Additionally, while the Board seeks an order compelling Churchill to sign an agreement that includes a confidentiality clause, it does not assert that the confidentiality clause was a term of the parties' agreement. Further, Judge Sullivan found that there had been "a meeting of the minds and an agreement as to the material terms of the settlement in this case" and that "[a]ll of the terms of the settlement agreement" were "reduced to writing" in the Term Sheet.

5

May 10, 2018 Ltr. And, the fact that the parties both signed the Term Sheet shows that they intended to be bound by it. *See Douglas v. First Sec. Fed. Sav. Bank, Inc.*, 643 A.2d 920, 928 (Md. Ct. Spec App. 1994). Accordingly, it is undisputed that the parties reached a settlement agreement, and there is no need for a hearing. *See Swift*, 636 F. App'x at 156; *see also Rohn Prods.*, 2010 WL 681304, at *3.

As for what the terms are, I note again that, as Judge Sullivan stated, the Term Sheet included "[a]ll of the terms of the settlement agreement." May 10, 2018 Ltr. Specifically, the Term Sheet included the following "definite and material terms": payment to Churchill and training for staff "on safety and inclusion in the school environment for LGBTQ students" in exchange for a full release of Churchill's claims. *See* Term Sheet. These are the material terms of the parties' agreement. *See* May 10, 2018 Ltr. (describing the Term Sheet as "a material term sheet"). Notably, this Court can only enforce the agreement; it cannot rewrite it to give one party the benefit of a more favorable bargain than the one into which the party entered. *See Calomiris v. Woods*, 727 A.2d 358, 369 (Md. 1999) ("Contracts play a critical role in allocating the risks and benefits of our economy, and courts generally should not disturb an unambiguous allocation of those risks in order to avoid adverse consequences for one party."). The Final Draft Settlement Agreement contains a confidentiality clause that was not a part of the parties' agreement and which would benefit the Board more than the parties' actual agreement. Therefore, I cannot compel Churchill to sign it.

Certainly, the Term Sheet also provided that the parties would "prepare terms of the settlement agreement," and the Board has been working to actualize this term. *See* Emails, ECF Nos. 32-1, 32-3, 32-4. In other circumstances, letters of intent to finalize agreements have been held not to be binding contracts. *E.g.*, *Int'l Waste Indus. Corp. v. Cape Envtl. Mgmt., Inc.*, 988 F.

6

Supp. 2d 542, 552 (D. Md. 2013) (stating that "the fact that the parties signed the [purchase order] document on October 15 did not create the existence of a binding contract"), *aff'd*, 588 F. App'x 213 (4th Cir. 2014). Indeed, "[t]here is a strong presumption against finding a binding agreement when the parties expressly contemplated the future preparation of and the execution of a formal contract document." *Tecart Indus., Inc. v. Nat'l Graphics, Inc.*, 198 F. Supp. 2d 719, 726 (D. Md. 2002). But, given that both parties, as well as the judge who facilitated the settlement conference, agree that the parties reached a binding agreement, this presumption is overcome.

By now, however, the agreed-upon deadline for training has passed. Nonetheless, their agreement is enforceable, and they can agree upon new deadlines for both training and payment.

**Motion to Seal**

The Board also filed a Consent Motion to Seal Exhibits 1, 2, 3, 6, and 7, which include the Term Sheet, communications between counsel, and draft settlement agreements. ECF No. 33. "It is well settled that the public and press have a qualified right of access to judicial documents and records filed in civil and criminal proceedings." *Doe v. Pub. Citizen*, 749 F.3d 246, 265 (4th Cir. 2014). In *Doe*, the Fourth Circuit differentiated between common law and First Amendment rights of access:

> The common-law presumptive right of access extends to all judicial documents and records, and the presumption can be rebutted only by showing that "countervailing interests heavily outweigh the public interests in access." *Rushford* [*v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (1988)]. By contrast, the First Amendment secures a right of access "only to particular judicial records and documents," *Stone* [*v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 180 (4th Cir. 1988)], and, when it applies, access may be restricted only if closure is "necessitated by a compelling government interest" and the denial of access is "narrowly tailored to serve that interest," *In re Wash. Post Co.*, 807 F.2d 383, 390 (4th Cir.1986) (quoting *Press– Enter. Co. v. Superior Court*, 464 U.S. 501, 510, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984) (internal quotation marks omitted)).

7

749 F.3d at 265–66. Pursuant to this Court's Local Rules, a motion to seal "shall include (a) proposed reasons supported by specific factual representations to justify the sealing and (b) an explanation why alternatives to sealing would not provide sufficient protection." Loc. R. 105.11.

According to the Board, these exhibits "contain information that is considered confidential by both parties." Mot. to Seal 1. It asserts that the draft settlement agreements "contain confidentiality provisions, the disclosure of which in the public record would make such provisions worthless." *Id.* Yet, as discussed, the agreement that the parties actually reached did not include a confidentiality provision. In any event, "[t]he presence of a confidentiality provision is not itself a sufficient reason to seal a settlement agreement." *Fonseka v. AlfredHouse ElderCare, Inc.*, No. GJH-14-3498, 2015 WL 3457224, at *2 (D. Md. May 28, 2015); *see al*so *Kanu v. Toyota Motor Sales, USA, Inc.*, No. DKC 15-3445, 2016 WL 3669945, at *3 (D. Md. July 11, 2016) ("Aside from the bare fact that defendants and FMH agreed to the confidentiality of the settlement and the obvious interest of almost any party in keeping close the amount it is willing to pay (or receive) to settle a claim, the parties have articulated no basis to seal the settlement agreement." (quoting *Bureau of Nat'l Affairs v. Chase,* No. ELH-11-1641, 2012 WL 3065352 at *3 (D. Md. July 25, 2012))). Thus, the Board's factual representations do not justify sealing these exhibits. *See* Loc. R. 105.11.

## **ORDER**

Accordingly, it is, this 11th day of February, 2019, hereby ORDERED that

1. Plaintiff's Motion to Reopen Mediation, ECF No. 30, IS DENIED, as stated in Judge Sullivan's May 10, 2018 Letter, ECF No. 31-4;

2. The Board's Motion to Enforce Settlement Agreement, ECF No. 31, IS GRANTED IN PART AND DENIED IN PART, as follows:

a. The binding agreement that the parties reached on April 18, 2018, as memorialized in the Term Sheet they signed that day, SHALL BE ENFORCED;

   b. Within three weeks of the date of this Memorandum Opinion and Order, the parties will sign and submit to the Court an agreement that contains only the terms on the Term Sheet and revised deadlines for training and payment;

   c. The request to compel Churchill to execute the Final Draft Settlement Agreement IS DENIED;

3. The Board's Motion to Seal, ECF No. 33, IS DENIED.


                                                         /S/
                                                Paul W. Grimm
                                                United States District Judge